Duane Benton, Chief Justice of the Missouri Supreme Court.

**STC CORPORATION, STC of America, Inc. and American Tape Company, Plaintiffs,**

v.

**UNITED STATES**

**E.I. Dupont De Nemours & Company, Hoechst Celanese Corporation and ICI Americas Inc., Defendant–Intervenors.**

Slip Op. 97–173.
Court No. 95–09–01181.

United States Court of International Trade.

Dec. 15, 1997.

Coudert Brothers (Steven H. Becker and Kay C. Georgi), for plaintiff, STC.

Frank W. Hunger, Assistant Attorney General, David M. Cohen, Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (Velta A. Melnbrencis, Assistant Director, and Lance J. Lerman), of counsel: Karen L. Bland, Attorney–Advisor, Office of the Chief Counsel, for Import Administration, U.S. Department of Commerce, for defendant.

Howrey & Simon (Matthew J. Clark, Michael A. Hertzberg and Maria Tan Pedersen) and Wilmer, Cutler & Pickering (John D. Greenwald), for defendant-intervenors, E.I. DuPont de Nemours & Company, Hoechst Celanese Corporation and ICI Americas Inc.

## OPINION

TSOUCALAS, Senior Judge.

Plaintiff, STC Corporation, STC of America, Inc. and American Tape Company (collectively "STC"), brings this action pursuant to Rule 56.2 of the Rules of this Court for judgment on the agency record contesting the final results of the Department of Commerce, International Trade Administration's ("Commerce") final results of the administrative review, entitled *Polyethylene Terephthalate Film, Sheet, and Strip From the Republic of Korea; Final Results of Antidumping Duty Administrative Review,* 60 Fed. Reg. 42,835 (Aug. 17, 1995), *as amended,* 61 Fed. Reg. 5375 (Feb. 12, 1996).

### Background

The administrative review at issue encompasses imports of polyethylene terephthalate ("PET") film, sheet and strip from the Republic of Korea covering the period November 30, 1990, through May 31, 1992. *See Initiation of Antidumping and Countervailing Duty Administrative Reviews,* 57 Fed. Reg. 32,521, 32,522 (July 22, 1992). On November 30, 1990, Commerce issued an affirmative preliminary determination and, in accordance with 19 U.S.C. § 1673(e) (1988), directed the Customs Service to suspend liquidation of relevant entries of PET film from Korea. *See Preliminary Determination of Sales at Less Than Fair Value: Polyethylene Terephthalate Film, Sheet, and Strip From the Republic of Korea ("Preliminary LTFV Results"),* 55 Fed.Reg. 49,668. On July 8, 1994, Commerce published the preliminary results of the instant review. *See Polyethylene Terephthalate Film, Sheet, and Strip From the Republic of Korea; Preliminary Results of Antidumping Duty Administrative Review,* 59 Fed.Reg. 35,098. Commerce published the Final Results at issue on August 17, 1995. *See Final Results,* 60 Fed. Reg. at 42,835.

STC claims Commerce erred in: (1) not utilizing a tax-neutral methodology for ad-

justing for value-added taxes ("VAT"); and (2) wrongfully including a particular sale of PET film in calculating U.S. price.

### Discussion

The Court's jurisdiction in this action is derived from 19 U.S.C. § 1516a(a)(2) (1994) and 28 U.S.C. § 1581(c) (1994).

The Court must uphold Commerce's final determination unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. N L R B*, 340 U.S. 474, 477, 71 S.Ct. 456, 95 L.Ed. 456 (1951) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)). "It is not within the Court's domain either to weigh the adequate quality or quantity of the evidence for sufficiency or to reject a finding on the grounds of a differing interpretation of the record." *Timken Co. v. United States*, 12 CIT 955, 962, 699 F.Supp. 300, 306 (1988), *aff'd*, 894 F.2d 385 (Fed.Cir.1990).

### 1. *Value–Added Tax Adjustment*

STC challenges the VAT adjustment methodology that Commerce applied in this review, arguing that Commerce should have employed a tax-neutral methodology in adjusting U.S. price for STC's dumping margin. STC's Mem. Supp. Mot. J. Agency R. at 4–5.

■ Commerce has decided to return to the tax-neutral methodology that the United States Court of Appeals for the Federal Circuit ("CAFC") held was a reasonable statutory interpretation in *Federal–Mogul Corp. v. United States*, 63 F.3d 1572 (Fed.Cir.1995), and consents to a remand to employ this methodology. Def.'s Partial Opp'n to Mot. J. Agency R. at 11–14.

E.I. DuPont de Nemours & Company, Hoechst Celanese Corporation and ICI Americas Inc. (collectively "DuPont") opposes a remand for Commerce to alter its Final Results VAT methodology, noting that the CAFC permitted, but did not mandate, the tax-neutral methodology in *Federal–Mogul*. DuPont's Opp'n to Mot. J. Agency R. at 10–11.

Pursuant to the CAFC's decision in *Federal–Mogul*, this Court has granted petitioners' requests for a remand for this purpose, to which Commerce has consented, in several instances. *See, e.g., Kolon Indus., Inc. v. United States*, 21 CIT ——, 1997 WL 755129, Slip Op. 97–166, at 4 (Dec. 3, 1997); *NSK Ltd. v. United States*, 21 CIT ——, ——, 969 F.Supp. 34, 42 (1997); *Torrington Co. v. United States*, 21 CIT ——, ——, 960 F.Supp. 339, 344 (1997). Hence, in accordance with *Federal–Mogul*, Commerce is required upon remand in this case to implement the court-approved tax-neutral VAT methodology in recalculating the adjustment to U.S. price in STC's dumping margin.

### 2. *Inclusion of Sale of Film that Allegedly Entered the United States Before the Suspension of Liquidation*

STC objects to the calculation of U.S. price, claiming that Commerce wrongfully included a particular sale of PET film. According to STC, the film in question was shipped on July 10, 1989, and, as the ocean voyage from Korea typically takes no longer than two months, entered the United States sometime in the fall of 1989. STC claims the film was not sold until May 19, 1992, under invoice AP9–003. Because the order suspending liquidation was published on November 30, 1990, STC emphasizes that liquidation was not suspended on this entry. STC acknowledges that the CAFC has approved the use of sales, as opposed to entries, to calculate U.S. price, but objects to the use of the merchandise involved in the sale at issue.

STC first argues that this merchandise is not subject to the order under 19 U.S.C. § 1675(a)(2) (1988).[1] STC bolsters its argu-

---

1 Section 1675(a)(2) (emphasis added) states the following:

For the purpose of [determining the amount of any antidumping duty], the administering authority shall determine—

ment by referring to Commerce's own policy. In particular, STC points to a recent exception to Commerce basing its calculations on sales of merchandise during the period of review, regardless of entry date. STC's Mem. Supp. Mot. J. Agency R. at 5–8. Under this exception, STC emphasizes that Commerce is to exclude sales of merchandise that entered before the suspension of liquidation when a respondent is able to demonstrate that the merchandise covered by a particular sale entered prior to the suspension of liquidation pursuant to Commerce's preliminary determination in the less-than-fair value ("LTFV") investigation. *Id.* at 9–10. STC here asserts that the merchandise entered the United States before suspension of liquidation, and so, falls within Commerce's exception. *Id.*

As a preliminary matter, STC's reliance on section 1675(a)(2) begs the question of whether the merchandise at issue should be included in the dumping margin calculation. The section specifically includes "each entry of merchandise subject to the antidumping duty order and included within that determination." 19 U.S.C. § 1675(a)(2). Hence, alone it is not dispositive of what merchandise is actually subject to the antidumping duty order and included within that determination; rather, such a decision is still necessary.

■ Commerce's suspension of liquidation encompassed all PET film entries from Korea "that [we]re entered, or withdrawn from warehouse, for consumption *on or after the date of publication of this notice in the Federal Register.*" *Preliminary LTFV Results,* 55 Fed.Reg. at 49,670. In its assessment of duties, Commerce usually includes all U.S. sales of subject merchandise made during the period of review that are linked to entries covered by a review. As STC noted, howev-

(A) the foreign market value and United States price of *each entry of merchandise subject to the antidumping duty order and included within that determination,* and

(B) the amount, if any, by which the foreign market value of each such entry exceeds the United States price of the entry.

2. Dupont disagrees with Commerce's practice of excluding sales satisfying Commerce's link test. In particular, DuPont claims this exception is in conflict with the court's decision in *Ad Hoc Com-*

er, Commerce has adopted a narrow exception to this general rule in exporter's sales price ("ESP") situations. Because there is usually a lag time between the entry of merchandise into the United States and its actual sale to an unrelated party in the United States, ESP sales may exist for which there are no corresponding entries during the same review period. Consequently, to prevent the inclusion of merchandise that entered the United States before the suspension of liquidation, Commerce excludes from its examination sales that correspond with an entry made prior to suspension if Commerce is satisfied that there is sufficient evidence to link the sale and the entered merchandise. To benefit from this exception, the manufacturer or exporter must present sufficient evidence to prove that: (1) the merchandise entered the United States prior to suspension of liquidation; and (2) the entry corresponds with a particular sale included in the review. *See Certain Corrosion–Resistant Carbon Steel Flat Products From Korea: Final Results of Antidumping Duty Administrative Review ("Corrosion–Resistant Carbon Steel"),* 61 Fed.Reg. 18,547, 18,565 (Apr. 26, 1996).

■ It is well-settled that, in ESP situations, Commerce may calculate a dumping margin based on all sales, rather than entries, made during the review. *See Ad Hoc Comm. of S. Cal. Producers of Gray Portland Cement v. United States,* 19 CIT ——, ——, 914 F.Supp. 535, 544 (1995); *see also Torrington Co. v. United States,* 44 F.3d 1572, 1578–79 (Fed.Cir.1995) (holding Commerce did not err in basing cash deposit rates on statutory U.S. price instead of entered Customs value). Further, STC does not challenge Commerce's adoption of its narrow exception.[2] Hence, the gravamen of

*mittee,* 19 CIT ——, 914 F.Supp. 535. Dupont's Opp'n to Mot. J. Agency R. at 8 n. 3.

This Court concludes that Commerce's exclusion is entirely consistent with *Ad Hoc Committee* and reasonable. In *Ad Hoc Committee,* the court affirmed Commerce's practice of considering all sales as reasonable even though it recognized this practice could result in the consideration of entries made prior to the suspension of liquidation. 19 CIT at ——, 914 F.Supp. at 544. First, even Commerce has recognized that the *Ad Hoc Committee* case was not one in which a

this dispute involves whether STC provided sufficient data to show that the merchandise in question entered the United States before suspension of liquidation pursuant to the Preliminary LTFV Results and that the corresponding entry can be tied to a sale under review. ·

■ STC fails to present actual evidence demonstrating that the merchandise at issue was entered prior to the suspension of liquidation but sold during the period of review; STC merely provides arguments to support its claim. It is uncontroverted that certain PET film was shipped from Korea to the United States on July 10, 1989. *See, e.g., STC's Questionnaire Response,* C.R. Doc. No. 11, Ex. C–1, at 4a, STC's App., Ex. 2 (Nov. 3, 1992) (STC sales listing). Moreover, it is clear upon inspection of the record that STC sold PET film merchandise under invoice AP9–003 in May of 1990, during the period of review. *See id.* However, there is no concrete evidence documenting when the merchandise shipped in July of 1989 arrived in the United States. Nevertheless, even assuming that this merchandise entered before the suspension of liquidation, STC provides no underlying documentary support demonstrating the validity of its sales data to substantiate its assertion that this merchandise was the same merchandise sold under invoice AP9–003. Rather, STC relies on its questionnaire responses, the administrative hearing transcript and its administrative case brief to support its claim. To satisfy its burden, STC would have had to provide Commerce with evidence such as entry documents, invoices, shipment records, inventory logs or other internal records. *Compare Certain Stainless Steel Wire Rods From France: Preliminary Results of Antidumping Duty Administrative Review,* 61 Fed. Reg. 8915, 8916 (Mar. 6, 1996) (Commerce

verified that the respondent satisfactorily linked certain sales during the review to entries of merchandise prior to the suspension of liquidation) *with Industrial Belts and Components and Parts Thereof, Whether Cured or Uncured, From Italy; Final Results of Antidumping Duty Administrative Review,* 57 Fed.Reg. 8295, 8296 (Mar. 9, 1992) (respondent's methodology provided no assurance that any sale during the period of review was of merchandise entered before the suspension of liquidation). The record is devoid of such evidence and the Court cannot simply rely on STC's unsubstantiated arguments and questionnaire responses that this merchandise is one and the same.

Consequently, as STC is unable to satisfy its burden to provide the requisite link between the merchandise entering the United States prior to suspension of liquidation and the sale made during the review, Commerce properly included the sale at issue in its calculation of U.S. price.

### *Conclusion*

In accordance with the foregoing opinion, this case is remanded to Commerce to utilize the court-approved tax-neutral methodology for adjusting for VAT. Commerce is sustained as to all other issues.

### *ORDER*

This case having been duly submitted for a decision and the Court, after due deliberation, having rendered a decision herein; now, in accordance with said decision, it is hereby

ORDERED that this case is remanded to Commerce, International Trade Administration ("Commerce"), to utilize the court-approved tax-neutral methodology for adjusting for value-added tax; and it is further

respondent linked specific sales during the period of review to specific entries prior to the suspension of liquidation. *See Corrosion–Resistant Carbon Steel,* 61 Fed.Reg. at 18,564–65. Further, the court's holding allowing consideration of all sales in the circumstances of *Ad Hoc Committee* does not preclude a finding that Commerce's practice of excluding certain sales in this case is unreasonable. Indeed, the Court finds that the employment of Commerce's link test results in a more accurate administration of the

dumping statute because it properly excludes irrelevant sales from the dumping determination. *See, e.g., Rhone Poulenc, Inc. v. United States,* 899 F.2d 1185, 1191 (Fed.Cir.1990) (noting the importance of ensuring accurate dumping margins); *Federal–Mogul Corp. v. United States,* 18 C.I.T. 1168, 1172, 872 F.Supp. 1011, 1014 (1994) (emphasizing that "fair and accurate determinations are fundamental to the proper administration of our dumping laws.").

ORDERED that Commerce's final determination is affirmed as to all other issues raised herein; and it is further

ORDERED that the remand results are due within ninety (90) days of the date that this opinion is entered. Any comments or responses by the parties to the remand results are due within thirty (30) days thereafter. Any rebuttal comments are due within fifteen (15) days of the date the responses or comments are due.