Slip Op. 02-112

# UNITED STATES COURT OF INTERNATIONAL TRADE

**Before: Judge Judith M. Barzilay**

|  |  |  |
|---|---|---|
| _____ | x | |
| ALLEGHENY LUDLUM CORP., *ET AL.*, | : | |
| Plaintiffs, | : | |
|  |  | Court No. 01-00236 |
| v. | : | |
| UNITED STATES, | : | |
| Defendant | : | |
|  | : | |
| _____ | x | |

[Plaintiffs' Motion for Judgment Upon an Agency Record denied]

Decided: September 12, 2002

*Collier Shannon Scott, PLLC, David A. Hartquist,*(*Jeffrey S. Beckington*)*, Adam H. Gordon*, for Plaintiffs.

*Robert D. McCallum*, *Jr.*, Assistant Attorney General, United States Department of Justice; *David M. Cohen*, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice; (*Lucius B. Lau*) Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice; *Scott D. McBride*, Office of the Chief Counsel for Import Administration, United States Department of Commerce, of Counsel, for Defendant.

## OPINION

**BARZILAY, JUDGE:**

### I. INTRODUCTION

Plaintiffs, Allegheny Ludlum Corp., AK Steel Corp., Butler Armco Independent Union, J & L Specialty Steel, Inc., North American Stainless, United Steelworkers of America, AFL-CIO/CLC, and Zanesville Armco Independent Organization ("the domestic industry"), contest the final results in *Stainless Steel Plate in Coils From Taiwan: Final Rescission of Antidumping*

*Duty Administrative Review*, 66 Fed. Reg. 18,610 (Apr. 10, 2001) ("*Final Rescission*"), by the

U.S. Department of Commerce (the "Department," "Commerce" or "Government"). The

domestic industry asks the court to remand the Department's final determination with

instructions to complete the first administrative review of Respondent Ta Chen's sales of

stainless steel plate in coils ("SSPC") from Taiwan. For reasons outlined below, the court denies

Plaintiffs' motion.

## II. BACKGROUND

For the purposes of its review, the Department investigated imports of SSPC produced by

Yieh United Steel Corporation ("YUSCO"), exported from Taiwan, and sold in the United States

by Ta Chen Stainless Pipe Co., Ltd., and its wholly owned U.S. subsidiary, Ta Chen International

Corp. ("Ta Chen").

In the initial investigation, covering January 1, 1997 through December 31, 1997, the

Department had to determine whether a "substantial portion of Ta Chen's U.S. sales were below

acquisition costs by comparing the total value of stainless steel plate sold below acquisition cost

to the total value of all stainless steel plate sales made by Ta Chen during the period of

investigation ("POI")." *Notice of Final Determination of Sales at Less Than Fair Market Value:*

*Stainless Steel Plate Coils from Taiwan,* 64 Fed. Reg. 15,493 (March 31, 1999). The

Department found that Ta Chen was selling YUSCO's merchandise at prices below its

acquisition costs, and thus was engaging in middleman dumping. To reflect this middleman

dumping, the Department calculated a cash deposit rate of 10.20 percent on sales produced by

YUSCO and sold to the United States through Ta Chen. The Department determined a rate of

8.02 percent for YUSCO alone.

On July 7, 2000, the Department published a notice of initiation of antidumping duty administrative review of sales by YUSCO and Ta Chen for the period of November 4, 1998 through April 30, 2000. *Initiation of Antidumping Duty and Countervailing Duty Administrative Reviews and Requests for Revocations in Part*, 65 Fed. Reg. 41,942 (July 7, 2000). On July 10, 2000, the Department issued a questionnaire to YUSCO and Ta Chen. On July 19, 2000, YUSCO withdrew its request for review and requested that the Department rescind the review. YUSCO claimed that none of its subject merchandise entered the United States during the period of review ("POR"), and therefore, the review was inappropriate. On August 16, 2000, Petitioners filed comments opposing YUSCO's request for rescission, and alleged that Ta Chen's U.S. affiliate, Ta Chen International (CA) Corp. (TCI), sold YUSCO's merchandise during the period of review and additionally had unsold inventory. On July 31, 2000, Ta Chen stated that it did not make any U.S. sales, shipments, or entries of subject merchandise during the POR, and requested not to answer the Department's questionnaire. On August 1, 2000, the Department asked Ta Chen supplemental questions concerning POR shipments of merchandise falling under a particular Harmonized Tariff Schedule ("HTS") number. Ta Chen responded that these were cut-to-length stainless steel plate and not subject merchandise. On August 24, 2000, the Department denied Ta Chen's request to not answer the supplemental questions and issued them. Ta Chen responded on August 31, 2000 and September 5, 2000, and stated that of Ta Chen's sales during the POR, all merchandise entered before the POR. Ta Chen also stated that while YUSCO sold subject merchandise to TCI during the POR, this merchandise entered the United States and was resold after the POR.

On September 12, 2000, petitioners submitted comments and argued that the Department should review TCI's resales of YUSCO's merchandise as constructed export price ("CEP") sales. On September 19, 2000, the Department, at the domestic industry's request, conducted an inspection of Customs documentation at the U.S. Customs Service ("Customs") in Long Beach, California. A review of a random sampling of entries during the POR revealed that none of the entries were of subject merchandise, because they were entered prior to suspension of liquidation. *See Memo to the File from Carrie Blozy and Juanita H. Chen* (October 19, 2000). Later, on September 26, 2000, the Department informed Ta Chen of its review of TCI's sales, and asked that Ta Chen submit its response by October 10, 2000. Ta Chen failed to answer. On October 24, 2000, the Department informed petitioners that as a result of its inspection and further inquiry by Customs, the Department was questioning whether to continue its administrative review. *See Memo to the File Juanita H. Chen through Edward Yang* (October 25, 2000).

On December 4, 2000, the Department published a notice of preliminary rescission of its review as a result of the absence of entries into the United States of subject merchandise during the period of review. *Preliminary Rescission of Antidumping Duty Administrative Review: Stainless Steel Plate in Coils From Taiwan*, 65 Fed. Reg. 75,760. On April 10, 2001, the Department published its notice of final rescission of antidumping duty administrative review. *Stainless Steel Plate in Coils From Taiwan: Final Rescission of Antidumping Duty Administrative Review*, 66 Fed. Reg. 18,610.

On December 7, 2001, Plaintiffs filed their Memorandum in Support of Rule 56.2 Motion for Judgment upon the Agency Record. They seek a remand to Commerce for the purpose of continuing the review and withdrawing the rescission.

## III. STANDARD OF REVIEW

This court will sustain the Department's antidumping duty determination unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i) (1999); *Fujian Machinery and Equipment Import & Export Corporation v. United States*, 25 CIT ___, ___, 178 F. Supp. 2d 1305, 1310 (2001). "Substantial evidence is something more than a 'mere scintilla,' and must be enough reasonably to support a conclusion." *Ceramica Regiomontana*, *S.A. v. United States,* 10 CIT 399, 405, 636 F. Supp. 961, 966 (1986) (citations omitted), *aff'd*, 810 F.2d 1137 (1987).

Additionally, "agency interpretations of statutes which they are charged with administering shall be sustained if permissible, unless Congress has directly spoken to the precise question at issue." *Rhone Poulenc, Inc. v. United States,* 899 F.2d 1185, 1190 n.9 (Fed. Cir. 1990) (citing *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-45,(1984)).

## IV. DISCUSSION

Plaintiffs contend that Commerce's decision to rescind the administrative review for Ta Chen is not supported by substantial evidence and not in accordance with law. Plaintiffs argue that the "Department erred by rescinding the administrative review contrary to its own general

policy and that, in any event, the Department's policy underlying the rescission is unlawful under the statute." *Pls.' Mem. in Supp. of Rule 56.2 Mot. for J. upon the Agency Record* ("*Pls.' Br.*") at 1.

A.    Commerce did not improperly depart from a general policy of placing the burden on the Respondent to link U.S. sales made during the first period of review to pre-suspension entries.

Plaintiffs object to the Department's rescinding the review of Ta Chen, without forcing Ta Chen to complete the process of answering the questionnaire that Commerce had sent them. Plaintiffs point to a "general policy" that places "on the respondent the burden of linking U.S. sales made during the first POR to pre-suspension entries." *Pls.' Br.* at 7. In this case, Commerce, at the request of the Plaintiffs, conducted its own investigation to link the sales during the POR to entries prior to the POR. Plaintiffs contend that despite Commerce's access to information that supported Ta Chen's claim, Commerce should have insisted that Ta Chen provide redundant information to verify the link.

Defendant does not contest Plaintiffs' view that it has a general practice of placing the burden on "parties to demonstrate the link between sales during the period of review and entries made prior to the period." *Def.'s Br.* at 17. Initially, Commerce did request that Ta Chen demonstrate that the sales were linked to pre-POR entries. However, in the interim, it discovered through its own investigation evidence of the link. Neither party disputes that such investigatory power is within Commerce's authority. Neither the statute at issue nor the regulations promulgated by Commerce require the Department to request information from parties to prove what it already has substantial evidence to support.

The statute, 19 U.S.C. § 1675(2)(A), requires "the administering authority" to "determine the normal value and export price (or constructed export price) of each entry of the subject merchandise and the dumping margin for each such entry." The statute does not place specific burdens on the parties, but leaves to Commerce to develop a methodology to "determine" if dumping took place. Commerce's methodology is outlined in the regulations enacted to implement the statute. *See* 19 C.F.R. 351.213(d) (2002). The regulations allow the Secretary to "rescind an administrative review, in whole or only with respect to a particular exporter or producer, if the Secretary concludes that, during the period covered by the review, there were no entries, exports or sales of the subject merchandise, as the case may be." 19 C.F.R. 351.213(d)(3).

In the absence of a statutory or regulatory restriction on Commerce to rely on information it discovered through self-initiated investigation, the Department is bound only by previous past practice. The government does not dispute that it is generally Commerce's practice to place the burden on foreign respondents to link sales to entries made prior to the review. *See Def.'s Br.* at 17. The government does not dispute that agencies must adhere to their prior practices or provide an explanation for a departure. *Id.* However, the government points out it asked Ta Chen for the relevant information, and after that request, and before Ta Chen fully responded, Commerce, at the urging of the Plaintiffs, discovered that the sales in question were linked to entries outside the POR. Commerce therefore explained, and justified its deviating from the general practice of requiring the respondent to provide information, because an additional demonstration linking sales and entries would be redundant with what was already on the record before the agency. The court will not interfere with Commerce's discretion in this matter as its

actions were a permissible interpretation of the statute and regulations regarding rescissions.

With no statutory, regulatory, or binding practice to prevent Commerce from relying on this

information its decision is in accordance with law.

B.      Commerce's regulations are not contrary to law.

Commerce has promulgated a policy, applied in this case, that,

> [s]ales of merchandise that can be demonstrably linked with entries prior to the
> suspension of liquidation are not subject merchandise and therefore are not
> subject to review by the Department.  Merchandise that entered the United States
> prior to the suspension of liquidation (and in the absence of an affirmative critical
> circumstances finding) is not subject merchandise within the meaning of 771(25)
> of the Act.

*Certain Stainless Steel Wire Rods From France: Final Results of Antidumping Duty
Administrative Review,* 61 Fed. Reg. 47,874, 47, 875 (Sept. 11. 1996).

Section 771(25) (codified at 19 U.S.C. § 1677(25) (1999)) of the Act, referenced in the

policy above defines subject merchandise as,

> the class or kind of merchandise that is within the scope of an investigation, a
> review, a suspension agreement, an order under this subtitle or section 1303 of
> this title, or a finding under the Antidumping Act, 1921.

What the policy enunciated in *French Wire Rod* and Section 771(25) makes clear is that

when Commerce is investigating whether dumping is occurring during a POR, it must analyze

the data for imports into the United States' market during a discrete period of time.  In this case

the period of review was from November 4, 1998 through April 30, 2000.  66 Fed. Reg. at

18,610.  The policy of linking sales to pre-suspension entries merely restates the obvious

proposition that merchandise that does not fall wtihin the period in question, is not to be

considered in that period. This policy was addressed by this Court in *STC Corporation et al. v. United States*, where the Court

> [found] that the employment of Commerce's link test results in a more accurate administration of the dumping statute because it properly excludes irrelevant sales from the dumping determination.

21 CIT 1379, 1383 n.2, 990 F. Supp. 829, 832 n.2 (1997) (citing *Rhone Poulenc,* 899 F.2d at 1191; *Federal-Mogul Corp. v. United States*, 18 CIT 1168, 1172, 872 F. Supp. 1011, 1014 (1994).

Plaintiffs contend that the policy of linking sales, outlined in *French Wire Rod*, is contrary to the statute because it defines merchandise which enters before the period of review as falling outside the definition of "subject merchandise" under the statute.  They argue that because the statute limits the definition of subject merchandise to the "class or kind," meaning the physical nature of the merchandise, anything that further limits the category is impermissible. *See Pls.' Br.* at 10.

However, as the language of the statute excerpted above makes clear, subject merchandise is that class or kind "within the scope of. . . a review."  That entries must be placed within, or outside, the period of review to be subject to a review is plain on its face.  Merely because some merchandise shares the same physical characteristics does not mean it can be arbitrarily investigated in any POR.  The statute explicitly defines "subject merchandise" as that which shares common physical characteristics *and* falls within the temporal scope of a review. The Plaintiffs' reasoning attempts to confuse this simple idea, but the argument is unavailing. Commerce's policy is in accordance with law.

    C.    <u>Continuing the review to set a cash deposit rate is not necessary.</u>

Plaintiffs insist that the review should go forward to set an updated cash deposit rate, even if there are no entries. Plaintiffs ground their argument in the policy that the deposit rate should be based on the most recent data available, and sales of entries prior to suspension of liquidation would provide such information. *Pls.' Br.* at 13. Plaintiffs ask that review of sales during the first administrative POR should not be rescinded, "and the Department's policy should be ended." *Id.*

Defendant counters that neither statute nor regulation requires that reviews must go forward to set a new deposit rate, even in the absence of entries. *Def.'s Br.* at 19. In this case Commerce calculated dumping margins at time of entry. To be consistent, updating the cash deposit rate would require new entries. However, there were no entries during the period of review, therefore there is nothing on which to base an updated cash deposit rate.

Plaintiffs cite to previous case law by this Court holding, "'the statutory scheme requires that estimated antidumping duties be as closely tailored to actual dumping duties as is reasonable given data available to [International Trade Adminstration] at the time the antidumping order is issued.'" *Pls.' Br.* at 13, (quoting *Badger-Powhatan, A Div. of Figgie Intern. v. United States*, 10 CIT 241, 249-250, 633 F. Supp. 1364, 1372-73 (1986) (footnote omitted)). While the court agrees that deposit rates should be as accurate and valid as possible, this does not mean rates should be set in the absence of "data available" as is the fact in this case.

    D.    <u>Commerce's regulations do not support review.</u>

The last prong of Plaintiffs' argument is that Department's regulations require continuing the review. Plaintiffs cite to the regulatory requirement that annual reviews

> will cover, as appropriate, entries, exports, or sales during the period from the date of suspension of liquidation under this part or suspension of investigation to the end of the month immediately preceding the first anniversary month.

19 C.F.R. § 351.213(e)(1)(ii). They contend that the language requires review in the case of any entries, exports or sales during the period of review.

To require a review in the case of any of the three circumstances would essentially read out of the regulation the qualifying clause "as appropriate." Commerce has validly promulgated a policy that sales linked to entries prior to liquidation will not be considered subject merchandise for the purpose of administrative reviews. *See supra*. Under this policy a review of sales linked to pre-suspension entries would not be appropriate.

**CONCLUSION**

For the foregoing reasons Plaintiffs' motion for judgment on the agency record is denied. The case is dismissed. Judgment will be entered accordingly.

Dated: _____          _____
     New York, NY          Judith M. Barzilay
                                           Judge