Slip-Op. 03-89

## UNITED STATES COURT OF INTERNATIONAL TRADE
### BEFORE: GREGORY W. CARMAN, CHIEF JUDGE

|  |  |
|---|---|
| ALLEGHENY LUDLUM CORP., AK STEEL CORP., BUTLER ARMCO INDEPENDENT UNION, J&L SPECIALTY STEEL, INC., UNITED STEELWORKERS OF AMERICA, AFL-CIO/CLC, and ZANESVILLE ARMCO INDEPENDENT ORGANIZATION,  Plaintiffs,  v.  UNITED STATES OF AMERICA,  Defendant. | Court No. 02-00502 |

[Plaintiffs' motion for judgment upon the agency record is denied.]

Dated: July 24, 2003

*Collier Shannon Scott, PLLC* (*David A. Hartquist, Jeffrey S. Beckington, Adam H. Gordon*), Washington, D.C., for Plaintiffs.

*Peter D. Keisler*, Assistant Attorney General; *David M. Cohen,* Director, Commercial Litigations Branch, Civil Division, United States Department of Justice; *Lucius B. Lau*, Assistant Director, Commercial Litigations Branch, Civil Division, United States Department of Justice; *Ada Bosque*, Trial Attorney, Commercial Litigations Branch, Civil Division, United States Department of Justice; *Scott D. McBride*, Attorney, Office of Chief Counsel for Import Administration, United States Department of Commerce, of Counsel, for Defendant.

### OPINION

**CARMAN, Chief Judge:** This matter comes before the Court on a motion for judgment on the administrative record filed by Plaintiffs, Allegheny Ludlum Corporation, AK Steel

Corporation, Butler Armco Independent Union, J&L Specialty Steel, Inc., United Steelworkers of America, AFL-CIO/CLC, and Zanesville Armco Independent Organization ("Plaintiffs"), domestic producers of stainless steel plate coils or unions representing workers who produce stainless steel plate coils. Plaintiffs challenge the final results by the United States Department of Commerce ("Commerce") in *Stainless Steel Plate in Coils From Taiwan: Final Results and Rescission in Part of Antidumping Duty Administrative Review,* 67 Fed. Reg. 40,914, 40,916-17 (June 14, 2002) ("*Final Results*"). Plaintiffs seek remand of the antidumping duty proceedings for Commerce to conduct a "meaningful review" of alleged "middleman" dumping by Ta Chen Stainless Steel Pipe Co., Ltd. ("Ta Chen Taiwan") and its U.S. affiliate, Ta Chen International (CA) Corp. ("TCI") (hereinafter referred to as "Ta Chen" collectively) and to determine a new cash deposit rate; and for Commerce to assign a dumping margin of 10.20 % *ad valorem*, the highest margin calculated in a segment of the proceeding, to Yieh United Steel Corp. ("YUSCO"), the Taiwanese producer of the subject merchandise, based on total adverse facts available. This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1581(c) (2000).

## BACKGROUND

This is the Second Administrative Review of the antidumping duty order against stainless steel plate in coils from Taiwan published by Commerce in 1999. *Antidumping Duty Orders; Certain Stainless Steel Plate in Coils From Belgium, Canada, Italy, the Republic of Korea, South Africa, and Taiwan*, 64 Fed. Reg. 27,756 (May 21, 1999) ("*Taiwanese Order*").[1] In the underlying investigation that resulted in the antidumping duty order, Commerce determined Ta

---

[1] The *Taiwanese Order* followed Commerce's final affirmative decision that the subject merchandise from Taiwan was dumped by the producer/exporter YUSCO and by the exporter Ta Chen. *Notice of Final Determination of Sales at Less Than Fair Value: Stainless Steel Plate in Coils From Taiwan*, 64 Fed. Reg. 15,493, 15,507 (Mar. 31, 1999).

Chen was engaged in "middleman" dumping of subject merchandise it purchased from YUSCO.

*Notice of Final Determination of Sales at Less than Fair Market Value: Stainless Steel Plate in*

*Coils From Taiwan*, 64 Fed. Reg. at 15,494. Specifically, Commerce found that YUSCO sold

the subject merchandise to Ta Chen at less than fair value, and Ta Chen sold this merchandise

below its acquisition cost. *Id.* Using a combination rate, Commerce calculated the two cash

deposit rates for subject merchandise produced by YUSCO: (1) 8.02 % *ad valorem* rate for Ta

Chen's direct U.S. sales; (2) 10.20 % *ad valorem* rate for YUSCO's U.S. sales through

middleman Ta Chen, with the additional 2.18 % attributable to Ta Chen's dumping of the subject

merchandise. *See id*. at 15,507.[2]

In the first administrative review, covering November 4, 1998, to April 30, 2000,

Commerce concluded that the subject merchandise Ta Chen sold during the review period was

entered prior to the preliminary determination. *Stainless Steel Plate in Coils From Taiwan:*

*Final Rescission of Antidumping Duty Administrative Review*, 66 Fed. Reg. 18,610, 18,612 (Apr.

10, 2001) ("*First Admin. Review, Final Results*"). As a result, Commerce rescinded its review of

Ta Chen. *Id.* The rescission was affirmed by this Court. *Allegheny Ludlum v. United States*,

240 F. Supp. 2d 1262, 1267 (Ct. Int'l Trade 2002), *appeal docketed*, No. 03-1096 (Fed. Cir. Nov.

---

[2] This Court found that Commerce's determination to use a combination rate to calculate the cash deposit rate for middleman dumping was supported by substantial evidence and otherwise in accordance with law. *Allegheny Ludlum Corp. v. United States*, 239 F. Supp. 2d 1381, 1384 (Ct. Int'l Trade 2002), *appeal docketed*, No. 03-1095 (Fed. Cir. Nov. 21, 2002). Appeals of that decision and a parallel decision, *Tung Mung Development Co., Ltd. v. United States,* 219 F. Supp. 2d 1333 (Ct. Int'l Trade 2002), *appeal docketed*, No. 03-1073 (Fed. Cir. Nov. 14, 2002), in which Commerce applied the same methodology of using a combination rate for middleman dumping, are pending before the United States Court of Appeals for the Federal Circuit. (Allegheny Ludlum Corp., et al.'s Rule 56.2 Mem. of Law in Supp. of Mot. for J. Upon the Agency R. ("Pls.' Br.") at 4-5; Def.'s Mem. in Opp'n to Pls.' Mot. for J. on the Agency R. ("Def.'s Br.") at 3.) Plaintiffs have not challenged Commerce's methodology of calculating middleman dumping in this case. (Pls.' Br. at 3 n.2.)

22, 2002) ("*Allegheny I*").

On May 1, 2001, Commerce published a notice of opportunity to request an

administrative review of the antidumping duty order for the period of May 1, 2000, to April 30,

2001. *See Antidumping or Countervailing Duty Order, Finding, or Suspended Investigation;*

*Opportunity To Request Administrative Review*, 66 Fed. Reg. 21,740 (May 1, 2001). Plaintiffs

requested an administrative review of sales of the subject merchandise by YUSCO and Ta Chen.

*Final Results,* 67 Fed. Reg. at 40,915. Pursuant to that request, Commerce initiated this

administrative review in accordance with 19 U.S.C. § 1675(a) on June 19, 2001. *Initiation of*

*Antidumping and Countervailing Duty Administrative Reviews and Requests for Revocations in*

*Part*, 66 Fed. Reg. 32,934 (June 19, 2001).

In the course of its investigation, Commerce issued an antidumping duty questionnaire to

YUSCO and Ta Chen on July 10, 2001. *Final Results,* 67 Fed. Reg. at 40,915; (Letter from Rick

Johnson, Program Manager, Enforcement Group III, Office 9 to Peter J. Koenig, Miller &

Chevalier of 07/10/01; Letter from Rick Johnson, Program Manager, Enforcement Group III,

Office 9 to William Clinton, White & Case of 07/10/01[3] (Def.'s App. Ex. 1)). The letters

accompanying the questionnaires stated:

> All parties are requested to respond to Sections A (Organization,
> Accounting Practices, Markets and Merchandise), B (Sales in the
> Home Market or to a Third Country), and C (Sales to the United
> States). If, after examining Sections A and C of the questionnaire,
> you conclude that YUSCO [or Ta Chen] and its affiliates did not
> have any U.S. sales or shipments during the review period
> identified above, please submit a statement to that effect, following
> the data submission requirements specified in the general

---

[3] The first reference to a document contained in the parties' Appendices will be identified
by the title of document and the appropriate Appendix Exhibit number. Subsequent references
will cite to the document by the Appendix Exhibit number.

instructions. If you do not submit such a statement for the administrative record in this case, we may conclude that YUSCO [or Ta Chen] has not been responsive to this questionnaire and may proceed on the basis of facts otherwise available.

(Def.'s App. Ex. 1 at 1-4.) The letters note that the respondents could request an extension of time in writing before the due date. (*Id.* at 2, 4.)

Ta Chen responded on August 2, 2001, asking Commerce that it not be required to complete the antidumping duty questionnaire because Ta Chen had no sales, entries, or shipments to the U.S. of the subject merchandise during the period of review. *Final Results,* 67 Fed. Reg. at 40,915; (Letter from Peter Koenig, Miller & Chevalier to U.S. Secretary of Commerce of 08/02/01 (Pls.' App. Ex. 4)). If Ta Chen would not be exempted, Ta Chen requested an extension of time to respond to Commerce's questionnaire. (Pls.' App. Ex. 4.) Commerce responded to Ta Chen by a letter dated August 2, 2001, in which Commerce extended the time for Ta Chen to respond to August 14, 2001, and notified Ta Chen that the information submitted will be subject to verification. (Letter from Rick Johnson, Program Manager, Enforcement Group III, Office 9 to Peter J. Koenig, Miller & Chevalier of 08/02/01 (Def.'s App. Ex. 2 at 5-6).) Commerce informed Ta Chen that Commerce was "unable to evaluate [the] request for exemption for filing a response to the questionnaire" at that time. (*Id.* at 5.) Commerce requested additional information concerning sales, entries, or shipments from Ta Chen's affiliates during the period of review and information regarding sales during the period of review by Ta Chen's subsidiaries that "resulted from sales and or shipments from Ta Chen to the United States during the 1st administrative review period (November 4, 1998 through April 30, 2000)." (*Id.*)

On August 14, 2001, Ta Chen responded to the request for specific information by reiterating that it had "no sales, import entries or exports to the United States" of the subject merchandise during the current period of review, May 1, 2000, to April 30, 2001. (Letter from Peter Koenig, Miller & Chevalier to U.S. Secretary of Commerce of 08/14/01 (Pls.' App. Ex. 5).) Ta Chen informed Commerce that none of its affiliates or subsidiaries had U.S. sales or shipments of the subject merchandise in the current period of review or during the first administrative review period. (*Id.*) Ta Chen requested another extension of time to respond to Section A and other portions of the questionnaire, but again asked that it be exempt from responding to the questionnaire because it "[had] no entries subject to dumping duties . . . and [did] not anticipate or plan on having future such entries – i.e., the dumping order fully stopped the imports of concern." (*Id.*) Commerce granted Ta Chen's request for the extension, allowing Ta Chen to respond to Section A by August 20, 2001, and the remaining portions of the questionnaire by August 24, 2001. (Letter from Rick Johnson, Program Manager, Enforcement Group III, Office 9 to Peter J. Koenig, Miller & Chevalier of 08/16/01 (Pls.' App. Ex. 6).)

On August 20, 2001, Ta Chen once again requested to be exempt from answering the questionnaire because of the nonexistence of sales, entries, or shipments of the subject merchandise, with one exception. (Letter from Peter Koenig, Miller & Chevalier to U.S. Secretary of Commerce of 08/20/01 (Pls.' App. Ex. 7).) Ta Chen informed Commerce that one of its affiliates, TCI "had some sales of [the subject merchandise] from its U.S. warehouses during the [current review] period May 1, 2000 to April 30, 2001 (as well as [the first administrative review period] November 4, 1998 to April 30, 2000) which [were] imported before November 4, 1998 and thus [are] not subject to dumping liability." (*Id.*) Ta Chen

reminded Commerce that similar sales of merchandise that entered prior to the suspension of liquidation were reported in the first administrative review and did not lead to the imposition of dumping duties. (*Id.*)

On November 1, 2001, Commerce informed Ta Chen that it was evaluating the request for exemption from the questionnaire and asked Ta Chen to respond to an additional questionnaire by November 14, 2001. (Letter from James C. Doyle, Program Manager, Office IX AD/CVD Enforcement to Peter J. Koenig, Miller & Chevalier of 11/01/01 (Pls.' App. Ex. 8).) On November 7, 2001, Ta Chen informed Commerce that it would not respond to the Supplemental Questionnaire. (Mem. to File from Doreen Chen, Case Analyst of 11/14/01 (Pls.' App. Ex. 9).)

Commerce contacted the U.S. Customs Service ("Customs") on November 20, 2001, and received confirmation that Ta Chen had no entries of the subject merchandise during the period of review. (Mem. to File from Stephen Bailey of 06/07/02 (Pls.' App. Ex. 15); *Issues and Decision Memorandum for the Final Results of Antidumping Administrative Review of Stainless Steel Plate in Coils from Taiwan* ("*Issues and Decision Memorandum*"), cmt. 1 (Pls.' App. Ex. 14 at 3).) YUSCO did not respond to the questionnaire and informed Commerce on January 8, 2002, that it was not participating in the Second Administrative Review. *Final Results,* 67 Fed. Reg. at 40,915; (Letter from William J. Clinton, White & Case to Donald L. Evans, Secretary of Commerce of 01/08/02 (Pls.' App. Ex. 10).)

Commerce published the preliminary results of the Second Administrative Review on February 7, 2002. *Stainless Steel Plate in Coils From Taiwan; Preliminary Results and Rescission in Part of Antidumping Duty Administrative Review*, 67 Fed. Reg. 5789 (Feb. 7, 2002)

("*Preliminary Results*"). Pursuant to its regulations and prior practice, Commerce preliminarily rescinded the Second Administrative Review as to Ta Chen. *Id.* at 5790. Commerce based the decision to rescind on inquiries to Customs, which confirmed to Commerce's satisfaction that Ta Chen had no entries of the subject merchandise during the period of review. *Id.*; (Pls.' App. Ex. 15.) Commerce acknowledged that administrative reviews are generally based upon sales during the period of review, rather than entries during the period of review, because of the respondent's general inability to definitively link period of review entries to subsequent sales. *Preliminary Results*, 67 Fed. Reg. at 5790. In this case, however, Commerce was satisfied that Ta Chen was able to establish that sales during the current period of review were linked to entries that pre-dated the suspension of liquidation, given the fact that there were no entries during the current period of review or the First Administrative Review period. *Id.*, *see also Stainless Steel Plate in Coils From Taiwan: Final Rescission of Antidumping Duty Administrative* Review, 66 Fed. Reg. 18,610 (Apr. 10, 2001). Commerce assigned YUSCO a preliminary margin of 8.02 % *ad valorem*, the highest margin rate determined in a prior segment of the proceedings for YUSCO, based upon total adverse facts available due to YUSCO's failure to participate in the review. *Id.* at 5790-91.

Plaintiffs submitted a brief in response to the *Preliminary Results* on March 11, 2002. *Final Results,* 67 Fed. Reg. at 40,915. Commerce issued the *Final Results* on June 14, 2002. *Id.* Commerce noted that it considered Plaintiffs' comments to the *Preliminary Results,* but declined to incorporate them. (Pls.' App. Ex. 14 at 2-7); (Def.'s Br. at 9.) Commerce instead adopted the determinations of the *Preliminary Results*, rescinding the Second Administrative Review as to Ta Chen and assigning YUSCO a rate of 8.02 %, based on total adverse facts available. *Final*

*Results,* 67 Fed. Reg. at 40,915-17. The *Final Results* include the two determinations that

Plaintiffs contest in the instant case. Plaintiffs commenced this action to challenge the *Final*

*Results* on July 12, 2002.

## STANDARD OF REVIEW

This Court will sustain Commerce's determination unless it is "unsupported by

substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C.

§ 1516a(b)(1)(B). Substantial evidence is "such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229

(1938) (citations omitted); *Micron Tech., Inc. v. United States*, 117 F.3d 1386, 1393 (Fed. Cir.

1997). "As long as the agency's methodology and procedures are reasonable means of

effectuating the statutory purpose, and there is substantial evidence in the record supporting the

agency's conclusions, the court will not impose its own views as to the sufficiency of the

agency's investigation or question the agency's methodology." *Ceramica Regiomontana, S.A. v.*

*United States*, 636 F. Supp. 961, 966 (Ct. Int'l Trade 1986), *aff'd*, 810 F.2d 1137 (Fed. Cir.

1987).

In determining whether Commerce's interpretation and application of the antidumping

statute is in accordance with law, this Court must consider whether "Congress has directly

spoken to the precise question at issue," and if not, whether the agency's interpretation of the

statute is reasonable. *Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-

44 (1984). "[A] court must defer to an agency's reasonable interpretation of a statute even if the

court might have preferred another." *Koyo Seiko Co. v. United States*, 36 F.3d 1565, 1570 (Fed.

Cir. 1994). Deference is based upon the recognition that "Commerce's special expertise in

administering the anti-dumping law entitles its decisions to deference from the courts." *Ta Chen*

*Stainless Steel Pipe, Inc. v. United States,* 298 F.3d 1330, 1335 (Fed. Cir. 2002).

## DISCUSSION

**I.     Commerce's Decision to Rescind the Administrative Review with Respect to Ta Chen is Supported by Substantial Evidence or is Otherwise in Accordance with Law.**

*A.     Plaintiffs' Contentions*

Plaintiffs advance three challenges to the *Final Results* as pertaining to Ta Chen.  First,

Plaintiffs assert that Commerce's finding that Ta Chen linked TCI resales to pre-suspension

entries is unsupported by substantial evidence on the record.  (Pls.' Br. at 9-10.)  Second,

Plaintiffs assert that Commerce inappropriately assumed Ta Chen's burden of supplying

sufficient information on the record because Commerce based its decision on information it

obtained from Customs.  (*Id.* at 10.)  Third, Plaintiffs argue that Commerce's policy of rescinding

reviews when U.S. resales are linked to pre-suspension entries is unlawful and Commerce's

failure to calculate new cash deposit rates based upon such resales is contrary to the intent of the

statute.  (*Id.* at 10, 21-31.)  Plaintiffs contend that Commerce should have deemed Ta Chen

uncooperative and assigned a total adverse facts available rate of 10.20 % *ad valorem* to Ta

Chen.  (*Id.* at 10.)

Plaintiffs assert that substantial evidence does not support a finding that Ta Chen had no

entries during the period of review because Ta Chen's certification claiming this fact was nothing

more than a bare assertion and the inquiry to Customs resulted in "very scattered and incomplete

bits of data."  (*Id.* at 20.)  Plaintiffs add that substantial evidence is lacking because Ta Chen did

not sufficiently cooperate with the investigation because Ta Chen failed to complete Commerce's questionnaire.  (*Id.* at 12-14.)

Plaintiffs argue that the fact that Commerce bases its decision on inquiries to Customs, which confirmed Ta Chen's statements, is not sufficient evidence because the information in the record did not come from Ta Chen, but rather from Commerce "unjustifiably assum[ing]" Ta Chen's burden of producing and developing the record.  (*Id.* at 10.)  Plaintiffs rely on *NTN Bearing Corp. of Am.  v. United States*, 997 F.2d 1453, 1458 (Fed. Cir. 1993) to support the proposition that the burden of production in an antidumping proceeding rests upon the respondent, who presumably has control of information relevant to the proceedings.  (*Id.* at 12.) Plaintiffs argue that in this case, Commerce inexplicably deviated from this basic principle when it accepted Ta Chen's "unsupported assertions" to Commerce as evidence linking TCI's resales during the period of review to pre-suspension entries and acted on its own to gather evidence to support this assertion by requesting information from Customs to verify Ta Chen's statements. (*Id.* at 15-16, 19-20.)  Plaintiffs assert that Ta Chen's failure to cooperate in establishing that TCI's resales during the period of review were linked to pre-suspension entries warrants Ta Chen being assigned a dumping margin rate of 10.20 % *ad valorem,* the highest rate from the original investigation based on total adverse facts available.  (*Id.* at 10, 20-21.)

In the alternative, Plaintiffs argue that even if Ta Chen is found to have met its burden of establishing that there were no entries of the subject merchandise during the period of review, Commerce should have completed a review of TCI's resales in order "to update as currently and as accurately as possible the cash deposit rate for Ta Chen and Ta Chen's subject merchandise" and comply with the "overriding objective" of the antidumping duty law, which is to calculate

the dumping margins as accurately as possible. (*Id.* at 11, 21-22, 25 (citing Trade Agreements Act of 1979, H.R. REP. NO. 96-317, at 69 (1979) and S. REP. NO. 96-249, at 76 (1979)[4]; *Rhone Poulenc, Inc. v. United States,* 899 F.2d 1185, 1191 (Fed. Cir. 1990); *Badger-Powhatan v. United States,* 633 F. Supp. 1364, 1372-73 (Ct. Int'l Trade 1986)).) Plaintiffs do not take the position that pre-suspension entries should be assessed dumping duties. (*Id.* at 22 n.42.) Rather, Plaintiffs stress the need to update the cash deposit rates for Ta Chen and its subject merchandise in order to adhere to the "broad objectives of the antidumping scheme as a whole." (*Id.* at 22.)

Plaintiffs argue that Commerce's policy on rescission, which excludes sales of merchandise that entered prior to the suspension of liquidation from an administrative review because the merchandise is not "subject merchandise," is unlawful. (*Id.* at 24.) Plaintiffs assert that the policy employed in this case serves to "curtail [Commerce's] authority to scrutinize current U.S. resales during the period of review if those resales are not linked to entries that likewise occurred during the period of review" and prevents the calculation of a current cash deposit rate. (*Id.*) Plaintiffs insist that Commerce is not statutorily precluded from conducting an administrative review in cases where there are U.S. resales during the period of review of items that entered prior to the suspension of liquidation. (*Id.* at 25 (citing 19 U.S.C. § 1675(a).) Furthermore, Plaintiffs assert that Commerce's own regulations and prior practices permit review under the circumstances of this case. (*Id.* at 26 (citing 19 C.F.R. § 351.213(e)(1)(I)).)

For the reasons discussed above, Plaintiffs assert that Commerce's decision to rescind the

---

[4] Plaintiffs cite to the section of the House of Representatives' Report entitled "Assessment of duty" and the corresponding section of the Senate's Report entitled "Assessment of Duty (Section 736 of the Tariff Act of 1930)" as support for their assertion that Congress stressed the importance of cash deposits of estimated antidumping duties. (Pls.' Br. at 21-22.) Section 736 is codified at 19 U.S.C. § 1673e, which outlines the procedures Commerce is to take in assessing and imposing dumping duties.

Second Administrative Review as to Ta Chen should be reversed because it is unsupported by

substantial evidence on the record and is otherwise not in accordance with law.

**B.      *Defendant's Contentions***

Defendant asserts that substantial evidence on the record establishes that Ta Chen had no

entries of the subject merchandise during the period of review, and this finding justifies

Commerce's application of 19 C.F.R. § 351.213(d)(3), which permits rescission under these

circumstances.  (Def.'s Br. at 22-26.)  Defendant contends that Commerce's regulation and its

interpretation of the statutory provisions supporting the regulation, as well as Commerce's

decision not to use period of review resales of merchandise that entered the U.S. prior to the

suspension of liquidation for calculating the cash deposit rate, are in accordance with law.  (*Id.* at

13-22.)  Defendant notes that this Court found Commerce's interpretation and application of the

statute and regulations in the First Administrative Review to be supported by substantial

evidence and otherwise in accordance with law.  (*Id*. at 14-23 (citing *Allegheny I*, 240 F. Supp.

2d at 1262).)

In the *Final Results*, Commerce found that evidence on the record established that Ta

Chen had no entries of the subject merchandise during the period of review and that any

resales by its affiliate TCI during the period of review were attributable to pre-suspension

entries.  *Final Results*, 67 Fed. Reg. at 40,916; (Pls.' App. Ex. 14 at 5-6).   Defendant points

to Ta Chen's numerous letters certifying that it had no entries, sales, or shipments of the

subject merchandise during the period of review; Commerce's inquires to Customs on

November 20, 2001, at the preliminary stage of the administrative review, and on May 28,

May 31, June 4, and June 5, 2002, all of which verified Ta Chen's certification; and the

findings of the First Administrative Review, as substantial evidence to support Commerce's finding. (Def.'s Br. at 23-25; Pls.' App. Ex. 13 and 15.) Defendant contends that this evidence made it "unnecessary to require Ta Chen to provide further evidence of no exports during the [period of review] and there is no reason to question the accuracy of Customs' conclusion." (*Id.* at 26.) As Commerce explained, neither the statute nor Commerce's regulations instruct Commerce to require Ta Chen to affirmatively link TCI's period of review sales to pre-suspension entries, when there is evidence on the record that establishes that no entries occurred during the period of review. (Pls.' App. Ex. 14 at 6.) In the *Issues and Decision Memorandum,* Commerce acknowledged that it has required respondents to demonstrate clear linkage of period of review sales to entries that occurred outside the period of review where there was uncertainty on record as to the dates of entries. (*Id.*) However, Commerce found that there was no such uncertainty in this case. (*Id.*) Defendant refutes Plaintiffs' challenge of the reliability of the Customs inquiry. (Def.'s Br. at 24-26.) As Commerce explained in the *Issues and Decision Memorandum*, Commerce has "relied on Customs' findings of no entries of subject merchandise [in other administrative reviews] . . . [and] [i]t is reasonable to rely on Customs' finding in this case as well." (Pls.' App. Ex. 14 at 7.)

Commerce decided to rescind the administrative review in accordance with 19 C.F.R. § 351.213(d)(3) because of its determination that Ta Chen had no entries during the period of review, and Commerce declined to use sales of non-subject merchandise in calculating a cash deposit rate. *Final Results*, 67 Fed. Reg. at 40,916; (Pls.' App. Ex. 14 at 5-7). Defendant asserts that these determinations are in accordance with law. (Def.'s Br. at 13-22.) In the *Issues and*

*Decision Memorandum*, Commerce explained that 19 C.F.R. § 351.213(d)(3) has been interpreted and applied to "permit the rescission of the review if there were no entries during the [period of review]." (Pls.' App. Ex. 14 at 5 (citing *Carbon Steel Wire Rope From Mexico; Rescission of Antidumping Duty Administrative Review,* 65 Fed. Reg. 58,261 (Sept. 28, 2000); *Stainless Steel Sheet and Strip From the Republic of Korea; Final Results and Partial Rescission of Antidumping Duty Administrative Review*, 66 Fed. Reg. 64,950 (Dec. 17, 2001)).)

Defendant contends that this regulation, as applied in this proceeding, is lawful and consistent with the underlying goals of the antidumping statute. (Def.'s Br. at 13-22.) Defendant explains that this regulation is founded upon the definition of "subject merchandise." (*Id.*) Goods purported to be sold in the U.S. at less than fair value become subject to assessments of duties upon Commerce's final determination that merchandise is being sold at less than its fair value. (*Id*. at 13-14.) The date that Commerce orders the suspension of liquidation is the first day upon which merchandise may be labeled "subject merchandise." (*Id.*) Defendant observes that it is upon the order of the suspension of liquidation that "respondents are placed upon notice that their merchandise may be subject to a future antidumping duty order." (*Id.*) Defendant asserts that Commerce will only review and assess dumping duties "upon merchandise that entered the United States <u>after</u> the initial order directing suspension of liquidation" because "merchandise that enters prior to the suspension of liquidation is not 'subject merchandise.'" (*Id.* at 14, 18 (citing *Antidumping Duties; Countervailing Duties; Final Rule*, 62 Fed Reg. 27,296, 27,314 (May 19, 1997)).)

Defendant explains that Commerce does not use entries of goods that entered the U.S. prior to the suspension of liquidation in any antidumping duty calculation, including calculating

cash deposit rates, because pre-suspension entries are not "subject merchandise," and, therefore, not relevant to the calculations. (*Id*. at 15-17.) Defendant observes that Plaintiffs do not dispute the fact that TCI's resales were of merchandise that entered the U.S. prior to the suspension of liquidation, and, therefore, are not subject to the antidumping duty order or any assessment of duties. (*Id*. at 14 (citing Pls.' Br. at 21-31).) Defendant maintains that Commerce was correct in rejecting Plaintiffs' contention, advanced absent any authority, that sales of merchandise not subject to the antidumping duty order may, nevertheless, be used to calculate the cash deposit rate. (*Id.* at 14.)

Defendant argues that Commerce properly rejected Plaintiffs' interpretation of 19 C.F.R. § 351.213 as permitting Commerce to consider non-subject merchandise sales in calculating cash deposit rates. (*Id.* at 17.) Defendant refutes Plaintiffs' assertion that Congress established an exception for the cash deposit rate, which would permit the use of non-subject merchandise sales to calculate a "new" cash deposit rate, despite the fact that the existing cash deposit rate was calculated using "sales of actual subject merchandise during the investigation." (*Id.* at 16-17.)

Defendant asserts that it is Commerce's practice not to use sales of non-subject merchandise to calculate or update cash deposit rates when there are no entries of the subject merchandise during a period of review, but rather to rescind the review, pursuant to 19 C.F.R. § 351.213(d)(3). (*Id.* at 18-20.) Defendant explains that this practice "ensures that entries are considered only once for purposes of [assessing antidumping duties and cash deposits], thereby promoting the accuracy of the antidumping duty and cash deposit rates." (*Id.* at 22 (citing Pls.' App. Ex. 14 at 7).)

Defendant concludes that the *Final Results* should be affirmed.

*C.* *Analysis*

Commerce's determination to rescind the Second Administrative Review as to Ta Chen is supported by substantial evidence on the record and is otherwise in accordance with law.

Commerce's decision not to apply total adverse facts available to Ta Chen is supported by substantial evidence and is otherwise in accordance with law. Pursuant to 19 U.S.C. § 1677e(a), Commerce will make a determination using facts available if

> (1) necessary information is not available on the record, or
> (2) an interested party . . . -
>     (A) withholds information that has been requested . . . ,
>     (B) fails to provide such information by the deadlines for submission of the information or in the form and manner requested, subject to [19 U.S.C. §§ 1677m(c)(1) and (e)],
>     (C) significantly impedes a proceeding . . . , or
>     (D) provides such information but the information cannot be verified.

19 U.S.C. § 1677e(a). Commerce will use adverse facts available if it "finds that an interested party has failed to cooperate by not acting to the best of its ability to comply with a request for information." 19 U.S.C. § 1677e(b).

It is true that Ta Chen declined to respond to the additional questions intended to provide information linking TCI's resales to pre-suspension entries. (Pls.' App. Ex. 9.) However, Commerce has the "discretion to determine whether a respondent has complied with an information request." *Daido Corp. v. United States*, 893 F. Supp. 43, 49-50 (Ct. Int'l Trade 1995) (citations omitted); *see also Allegheny Ludlum Corp. v. United States*, 215 F. Supp. 2d 1322, 1338 (Ct. Int'l Trade 2000); *Maui Pineapple Co. v. United States*, No. 01-01017, 2003 Ct. Intl. Trade LEXIS 55, at *39 (Ct. Int'l Trade Apr. 16, 2003). Additionally, as the statute plainly states, facts available will be used "[i]f necessary information is not available on the record."

19 U.S.C. § 1677e(a)(1). As Commerce stated in the *Issues and Decision Memorandum,* there was sufficient information on the record to establish the lack of sales, entries, or shipments during the period of review and to link TCI's resales to pre-suspension entries without Ta Chen's responses to the questionnaires. (Pls.' App. Ex. 14 at 5-7.) Ta Chen replied to Commerce's requests for information by maintaining that it had no sales or entries of the subject merchandise during the period of review and the resales attributable to TCI were of merchandise that entered prior to the suspension of liquidation. Commerce informed Ta Chen that it would evaluate its request to be exempt from providing additional information. (Pls.' App. Ex. 8.) Thus, Commerce reasonably chose not to label Ta Chen uncooperative.

Commerce relied on substantial evidence on the record to conclude that Ta Chen had no entries of the subject merchandise during the period of review. Furthermore, Commerce's decision to exclude period of review resales by TCI, an affiliate of Ta Chen, from review and from use in cash deposit rate calculations is supported by substantial evidence on the record and is otherwise in accordance with law. Substantial evidence established that the merchandise sold by TCI was not "subject merchandise" because it entered the U.S. prior to the suspension of liquidation. Notably, Commerce received several letters from Ta Chen certifying that Ta Chen did not have any entries during the period of review. (*See* Pls.' App. Exs. 4, 5 and 7.) Commerce then confirmed this fact by its inquiries to Customs during the preparations of both the *Preliminary Results* and the *Final Results.* (Pls.' App. Ex. 15.) Commerce was also able to refer to its determination in the First Administrative Review, which found that Ta Chen had no entries of the subject merchandise during that period of review and any resales by TCI were of goods that entered prior to the suspension of liquidation. *See First Admin. Review, Final Results,*

66 Fed. Reg. at 18,612; *Allegheny I,* 240 F. Supp. 2d at 1267. These results provided answers to some of Commerce's supplemental questions regarding TCI's sales during the First Administrative Review. (Pls.' App. Ex. 8 at 2.)

Plaintiffs' challenge to the quality of information that Commerce was able to obtain from the inquiry to Customs is unpersuasive. "Commerce enjoys wide latitude in its verification procedures. The Court defers to the agency's sensibility as to the depth of the inquiry needed." *FAG Kugelfischer Georg Schafer AG v. United States*, 131 F. Supp. 2d 104, 133 (Ct. Int'l Trade 2001) (internal quotation and citation omitted). Aside from Plaintiffs labeling the results of the Custom's inquiry as "scattered and incomplete," Plaintiffs have presented nothing that would indicate the need for further examination of the information obtained from Customs that verified Ta Chen's statements. (Pls.' Br. at 20); *see also FAG Kugelfischer*, 131 F. Supp. 2d at 133. Thus, substantial evidence supports Commerce's determination that Ta Chen had no entries during the period of review.

Commerce's decision to accept Ta Chen's certified statements and Commerce's inquiry to Customs to verify these statements are not actions contrary to the proposition that the burden of producing the record lies with the party possessing the information necessary to complete an administrative review. *See NTN Bearings*, 997 F.2d. at 1458; *Zenith Elecs. Corp. v. United States,* 988 F.2d 1573, 1583 (Fed. Cir. 1993).

Commerce is charged with periodically reviewing antidumping duty orders to determine "the amount of any antidumping duty, and . . . estimated duty to be deposited." 19 U.S.C. § 1675(a)(1)(B). In order to determine the amount of the duty, Commerce is to determine "the normal value and export price . . . of each entry of the subject merchandise, and the dumping

margin for each such entry." 19 U.S.C. § 1675(a)(2)(A)(I)-(ii). As this Court observed in the proceedings originating in the First Administrative Review, "[t]he statute does not place specific burdens on the parties, but leaves to Commerce to develop a methodology to 'determine' if dumping took place." *Allegheny I*, 240 F. Supp. 2d at 1265. Commerce articulated its methodology in its regulations implementing the statute. These regulations include a provision permitting rescission of an administrative review where Commerce finds that a particular exporter or producer had no entries, sales, or exports of the subject merchandise during the period of review. *See* 19 C.F.R. § 351.213(d)(3). Unless restricted by statute, regulations, or its prior practice, Commerce is free "to rely on information it discovered through self-initiated investigation." *Allegheny I*, 240 F. Supp. 2d at 1265.

Nothing in this proceeding undermines the justification behind placing the burden of production upon a respondent to link sales to entries made outside a period of review. As Commerce explained in the *Issues and Decision Memorandum*, the policy of requiring respondents to affirmatively link period of review sales to entries outside the period of review is utilized when there is uncertainty in the record as to the dates of the entries, with some entries entering prior to the period of review and others entering during the review period. (Pls.' App. Ex. 14 at 6.) Commerce stated "there was little uncertainty as to the lack of entries of the subject merchandise by Ta Chen during the [period of review]." (*Id.*) Thus, requiring Ta Chen to answer Commerce's questionnaire and supplemental questions would have yielded information that was already established by the record. Here, as in *Allegheny I*, Commerce did not improperly assume Ta Chen's burden of affirmatively linking TCI's resales to pre-suspension entries.

This Court has already determined that Commerce's interpretation of the statute and the application of its regulation are not contrary to law and setting a new cash deposit rate using non-subject merchandise is not necessary. *See Allegheny I*, 240 F. Supp. 2d at 1266-67. Plaintiffs have presented nothing to persuade this Court to reach a different holding in the Second Administrative Review.

Here, as in *Allegheny I*, Commerce applied a policy that is premised upon the time constraints contained in the statute. *See id.* "Subject merchandise" is defined as "the class or kind of merchandise that is *within the scope* of an investigation, a review, a suspension agreement, an order under this subtitle or section 1303 of this title, or a finding under the Antidumping Act, 1921." 19 U.S.C. § 1677(25) (emphasis added). This definition makes clear that subject merchandise is limited by both physical characteristics and time. Commerce's policy of reviewing and assessing duties only on merchandise that entered the U.S. after suspension of liquidation is consistent with the statute, as entries proceeding suspension of liquidation are not subject merchandise. Thus, Commerce's refusal to use pre-suspension entries to calculate or update cash deposit rates is in accordance with law.

Plaintiffs insist that the use of pre-suspension entries to calculate cash deposit rates would result in current and accurate rates. (Pls.' Br. at 11.) However, Plaintiffs provide no authority for this assertion, nor do they explain how the use of non-subject merchandise sales would lead to a more accurate cash deposit rate. This Court holds that Commerce's decision to rescind the review as to Ta Chen, rather than using non-subject merchandise for its calculations, is supported by substantial evidence and is otherwise in accordance with law.

II.     **Commerce's Decision to Apply an 8.02 % *Ad Valorem* Rate to YUSCO Based upon Total Adverse Facts Available Is Supported by Substantial Evidence and Is Otherwise in Accordance with Law.**

A.     *Plaintiffs' Contentions*

Plaintiffs argue that Commerce incorrectly applied 8.02 % *ad valorem* rate for YUSCO, when the total adverse facts available rate is 10.20 % *ad valorem*. (Pls.' Br. at 31-32.) Plaintiffs contend that the reasoning behind Commerce's decision to exclude the 2.18 % attributable to Ta Chen's middleman dumping is contrary to law. (*Id.*) Plaintiffs' maintain that both YUSCO and Ta Chen should have been found uncooperative. (*Id.*) Plaintiffs contend that because of the failure of both to cooperate, the record does not support Commerce's finding that YUSCO made no sales of the subject merchandise through Ta Chen. (*Id.* at 32-33.)

Plaintiffs again charge Commerce with excusing Ta Chen and YUSCO of the burden of establishing the record, which led to Commerce "fill[ing] the gap consequently left in the record" to support its choosing 8.02 % *ad valorem* rate for YUSCO. (*Id.* at 34.) Plaintiffs allege that "[Commerce's] belief and finding that YUSCO shipped directly to the U.S. during the [period of review] without any involvement by Ta Chen as the middleman are unsubstantiated, because Ta Chen did not respond to [Commerce's] questions and did not link TCI's U.S. resales during the [period of review] to pre-suspension entries." (*Id.* at 35.)

Plaintiffs insist that the most significant factor to consider is the non-responsiveness of Ta Chen and YUSCO in the administrative review. (*Id.*) Plaintiffs state that "[i]n situations like this, the statute calls for adverse facts available as a way of encouraging respondents to submit information to [Commerce]." (*Id.* at 35-36.) Plaintiffs assert that Commerce's failure to use a 10.20 % *ad valorem* rate for both Ta Chen and YUSCO would lead these respondents to "the

only reasonable conclusion . . . that non-cooperation with [Commerce] is advantageous." (*Id.* at 36.) Plaintiffs continue that nothing in the record supports Commerce's "desire not to ascribe middleman dumping by Ta Chen to YUSCO when YUSCO supposedly had no reason to know or suspect that Ta Chen was engaged in middleman dumping." (*Id.* at 37-38.) Plaintiffs argue that Commerce, instead, should have presumed YUSCO's awareness of Ta Chen's middleman dumping because an adverse inference was warranted and YUSCO was aware that Ta Chen had engaged in middleman dumping as a result of the original investigation. (*Id.* at 38.) Plaintiffs add that Commerce departed from its normal practice of setting a cash deposit rate that uses "[a] single, weighted-average rate . . . to avoid potential manipulation to reduce antidumping duty liability from occurring." (*Id.* at 39.) Therefore, Plaintiffs assert, Commerce should have applied a 10.20 % *ad valorem* rate to YUSCO. (*Id.*)

**B.      *Defendant's Contentions***

Defendant contends that Commerce's decision to use an adverse facts available rate based on YUSCO's entries, rather than a rate attributable to YUSCO's entries through Ta Chen, is supported by substantial evidence. (Def.'s Br. at 27.) Defendant notes that Commerce has broad discretion to "select an adverse facts rate that will create the proper deterrent to ensure that respondents cooperate with its investigations and to assure a reasonable margin." (*Id.* (citing *F.Lii de Cecco di Filippo Fara S. Martino S.p.A. v. United States*, 216 F.3d 1027, 1032 (Fed. Cir. 2000).) Defendant argues that Plaintiffs' assertion that a different rate should apply "does not render Commerce's decision to apply the 8.02 [adverse facts available] rate unreasonable." (*Id.*) Defendant notes that "[a]ttempts to assail the correctness of Commerce's determination (as opposed to its methodology) are outside the standard of review." (*Id.* at 27-28 (referring to

*Timken Co. v. United States*, 59 F. Supp. 2d 1371, 1376 (Ct. Int'l Trade 1999);

*Tehnoimportexport, UCF Am., Inc. v. United States*, 783 F. Supp. 1401, 1406 (Ct. Int'l Trade 1992).)

Defendant refutes Plaintiffs' claim that application of a 10.20 % *ad valorem* rate would more effectively encourage respondents to cooperate with administrative reviews. (*Id.* at 28.) Defendant further notes that the record does not support an assumption of middleman dumping. (*Id.*) In the *Issues and Decision Memorandum*, Commerce explained that "[n]either the Act nor the legislative history instructs [Commerce] to presume middleman dumping in light of no entries of the subject merchandise during the [period of review] from the middleman." (Pls.' App. Ex. 14 at 3.)

Defendant argues that Commerce's selection of the 8.02 % rate based on adverse facts available is reasonable because the rate "must be a 'reasonably accurate estimate of the respondent's actual rate.'" (Def.'s Br. at 28-29 (citing *F.Lii de Cecco*, 216 F.3d at 1032.) Defendant points out that Commerce's practice in applying adverse facts available is to select the highest margin from any segment of the proceeding attributable to a given party's actions, pursuant to 19 U.S.C. § 1677e(b). (*Id.* at 29 (citing *Fresh Cut Flowers From Mexico; Final Results of Antidumping Duty Administrative Review*, 61 Fed. Reg. 6812, 6814 (Feb. 22, 1996)).) In the *Issues and Decision Memorandum,* Commerce explained that "it would be reasonable to use an adverse number which, from the record, reflected YUSCO's exports directly to the United States, but illogical to calculate a margin which combined the dumping behavior of two unaffiliated parties." (Pls.' App. Ex. 14 at 3.) Defendant concludes that based upon this Court's recognition of Commerce's discretion to select the appropriate adverse facts to apply, the

decision to apply an 8.02 % adverse facts available rate for YUSCO should be affirmed. (*Id.* at 30.)

### C. Analysis

Commerce's decision to select 8.02 % *ad valorem* rate as the adverse facts available rate for YUSCO is supported by substantial evidence and is otherwise in accordance with law. Plaintiffs argument is founded largely upon the premise that both Ta Chen and YUSCO should have been both been labeled "uncooperative." (Pls.' Br. at 34-35.) As discussed above, Commerce correctly declined to label Ta Chen as "uncooperative," thereby eliminating the use of adverse facts as applicable to Ta Chen. This includes the use the 2.18 % *ad valorem* rate attributable to Ta Chen's middleman dumping of YUSCO products in the U.S. Further, as discussed above, substantial evidence on the record supports Commerce's finding that there were no entries of the subject merchandise by Ta Chen during the period of review.

Though Commerce has broad discretion "to choose which sources and facts it will rely on to support an adverse inference when a respondent has been shown to be uncooperative . . . Commerce's discretion in these matters . . . is not unbounded." *F.Lii de Cecco*, 216 F.3d at 1032. The Congressional intent behind the adverse inference provision

> is to provide respondents with an incentive to cooperate, not to impose punitive, aberrational, or uncorroborated margins. . . . [Congress] intended for an adverse facts available rate to be a reasonably accurate estimate of the respondent's actual rate, albeit with some built-in increase intended as a deterrent to non-compliance. Congress could not have intended for Commerce's discretion to include the ability to select unreasonably high rates with no relationship to the respondent's actual dumping margin.

*Id.* In this case, YUSCO is the non-cooperative respondent and a previous segment of these

proceedings determined that the dumping rate attributable to YUSCO's actions was 8.02 % *ad valorem,* the highest margin calculated in any segment for YUSCO's direct shipments to the U.S. *See Notice of Final Determination of Sales at Less Than Fair Value: Stainless Steel Plate in Coils From Taiwan, Part III*, 64 Fed. Reg. 15,493, 15,494, 15,507 (Mar. 31, 1999). A 10.02 % rate from this segment took into account actions by a non-affiliated party, Ta Chen, who was found to have engaged in middleman dumping. *Id.* In this case, Commerce reasonably relied on substantial evidence on the record to select the 8.02 % rate based on total adverse facts available.

Plaintiffs' assertions that it would be appropriate to infer middleman dumping in this proceeding are without merit. Absent any evidence to support such a presumption or to ascribe knowledge of middleman dumping to YUSCO, other than Plaintiffs' arguments that Commerce should so do, Commerce properly exercised its discretion in selecting an adverse facts available rate of 8.02 % *ad valorem* for YUSCO's failure to cooperate with the administrative review. Plaintiffs' argument that this choice somehow impacts the cash deposit rate and encourages producers to be uncooperative and manipulative is unpersuasive.

Commerce's determination is supported by substantial evidence on the record and is otherwise in accordance with law.

## CONCLUSION

Upon consideration of Plaintiffs' Rule 56.2 motion for judgment upon the agency record, Defendant's response, and Plaintiffs' reply, Plaintiffs' motion is denied. Commerce's determination to rescind the administrative review as to Ta Chen and to apply an 8.02 % *ad valorem* rate based upon adverse facts available for YUSCO is supported by substantial evidence

and is otherwise in accordance with law. The *Final Results* are affirmed in their entirety. This

case is dismissed.

_____
Gregory W. Carman,
Chief Judge

Dated: July 24, 2003
New York, New York